UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**PATRICE MUNSEL PERRY**  CASE NO. **15-10064**
    DEBTOR  CHAPTER 7

**GULFSOUTH CREDIT, INC.**  ADV. NO. 15-1021
    PLAINTIFF

V.

**PATRICE MUNSEL PERRY**
    DEFENDANT

### MEMORANDUM OPINION

GulfSouth Credit, Inc. ("GulfSouth") contends that Patrice Munsel Perry, formerly known as Patrice Munsel Garrison, owes a debt to GulfSouth that is nondischargeable under 11 USC '523(a)(2)(A) and (B). The court finds the debt nondischargeable under Bankruptcy Code section 523(a)(2)(B).

### Facts

*The GulfSouth Loan Application*

Patrice Perry and her former husband[1] applied to borrow money from GulfSouth to buy an automobile in May 2014. The couple initially applied for the loan over the telephone but later completed the process at GulfSouth's office. Although both signed the two-page application,[2] only Perry signed two other documents: a statement that the application listed all of her debts and was "true and complete" and a second calling for the customers to disclose their income and to

---

[1] The debtor was previously married to Kenneth Nolan Garrison.

[2] May 7, 2014 GulfSouth Credit Application, Exhibit GulfSouth 1.

list their creditors.[3] Mr. and Mrs. Garrison secured the loan and both signed a $6,088.00 promissory note.[4]

The Garrisons eventually defaulted on the loan and on May 27, 2014 filed a joint chapter 13 case (Case No. 14-10655). Mrs. Garrison later voluntarily dismissed her case after the couple separated.[5] Ms. Perry filed her own chapter 7 bankruptcy on January 23, 2015. GulfSouth timely sued to have Perry's debt declared nondischargeable based on alleged misrepresentations in the May 2014 loan application.

*The Debtor's Alleged Misstatement*

The schedules filed in the Garrisons' 2014 chapter 13 case listed payday loans dating from 2013 with the following creditors: Bottom Dollar Payday ("Bottom Dollar"), Cash Net, Cash Tyme and Check Lenders.[6] Thus, the Garrisons declared under penalty of perjury that they owed at least three and possibly four[7] payday loans when they borrowed the money from GulfSouth in May 2014. However, the Garrisons did not list any payday loans on the application, and Perry alone specifically stated on a separate document that the couple had "no payday loans."[8] Additionally, Ms. Perry declared on the application verification that the Garrisons' application listed all their debts, including specifically payday loans.

---

[3] May 7, 2014 GulfSouth Application Verification, Exhibit GulfSouth 2; May 7, 2014 Statement of Borrowers Financial Condition, Exhibit GulfSouth 7.

[4] May 7, 2014 Promissory Note, Exhibit GulfSouth 3.

[5] September 16, 2014 Order Dismissing Chapter 13 Case as to Patrice Munsel Garrison Only, P-36 in Case No. 14-10655.

[6] Schedule F in Case No. 14-10655, Exhibit GulfSouth 4.

[7] Ms. Perry sought to distance herself from liability for a payday loan to Cash Net, which she described as her husband's debt. However, she acknowledged that her husband incurred the debt while they were married and living together under the Louisiana community property regime. La. Civ. Code arts. 2334, 2345.

[8] Exhibit GulfSouth 7, the Statement of Borrowers Financial Condition.

2

Ms. Perry at trial did not deny signing any of the documents associated with the loan application or dispute the date or liabilities for the 2013 payday loans disclosed in the 2014 bankruptcy schedules. Indeed, she specifically admitted that she'd taken out loans from Bottom Dollar, Cash Tyme and Check Lenders before she borrowed from GulfSouth and still owed those debts when she filed bankruptcy in May 2014.[9] However, Perry insisted that she'd disclosed the Check Lenders debt to GulfSouth during the loan process.[10]

*Gulf South's Loan Process*

Tina Williams, GulfSouth's assistant manager, took Ms. Perry's loan application. Ms. Williams maintained that Perry did not disclose to GulfSouth during the loan application process in May 2014 that she owed any payday loans. GulfSouth did obtain a credit report on Perry during the application process but it did not reflect any payday loans. Ms. Williams explained that was not unusual: typically payday loans do not appear on a borrower's credit report.

GulfSouth only learned of the debtor's prior payday loans when Ms. Perry filed chapter 13 jointly with her former husband on May 27, 2014, only weeks after making the loan. Perry testified under oath at the meeting of creditors in the 2014 case that she had outstanding payday loans from Bottom Dollar, Cash Tyme and Check Lenders before she borrowed money from GulfSouth.[11] No evidence established that GulfSouth should have suspected that Perry had concealed outstanding debts from GulfSouth when she borrowed in May 2014. Indeed, Perry

---

[9] Perry testified at trial that the Cash Tyme loan was from 2006 or 2007 and was in collections, as was the loan from Bottom Dollar. She offered no evidence, however, as to the origination date of the CashTyme loan or that either debt was in collections.

[10] The debtor listed a December 2013 debt to Check Lenders on schedule F filed in her current bankruptcy, characterizing the debt as "Disputed/Paid Off/Listed on Credit Report." None of the other payday loans listed on schedule F in the 2014 joint case are listed on the schedules for the current bankruptcy case.

[11] Transcript of July 24, 2014 meeting of creditors, pp. 25-30, Exhibit GulfSouth 5. Both Perry and her former husband claimed in that testimony that Mr. Garrison alone was liable for the Cash Net debt.

had been a GulfSouth[12] customer before then but had given it no reason to suspect her truthfulness, according to Williams.

GulfSouth contends that it would not have loaned Ms. Perry the money had it known of her liability on the outstanding payday loans. Williams testified that GulfSouth would consider lending money to customers who had a single outstanding payday loan at the time of the transaction but would not lend to customers with more than one outstanding payday loan unless the loan proceeds were used to retire all the payday loan debts.

## Analysis

*GulfSouth's Judgment of Nondischargeability Against*
*Kenneth Garrison Does Not Determine the Outcome in this Proceeding*

GulfSouth sued both Ms. Perry and Mr. Garrison in the 2014 case to have their debt declared nondischargeable under the same sections of the Bankruptcy Code as it urges in this adversary proceeding, 11 U.S.C. §523(a)(2)(A) and (B).[13] However, the court granted judgment by default against Mr. Garrison *only* and *not* this defendant.[14]

GulfSouth's pretrial memorandum did not reurge its contention that the prior judgment was a basis for declaring the debt nondischargeable against Ms. Perry, so the claim is abandoned.

---

[12] At the meeting of creditors, Tina Williams stated that the Garrisons did disclose the Check Lenders debt to GulfSouth during their application for a loan in March 2014. Exhibit GulfSouth 5, p. 31, ll. 6-10. However, no evidence supported a finding that GulfSouth knew or should have suspected that the Check Lenders debt remained outstanding when it made the loan on May 7, 2014.

[13] Complaint Objecting to Dischargeability of Debt, Adv. No. 14-1032.

[14] October 2, 2014 Judgment, P-13, Adv. No. 14-1032.

*Bankruptcy Code §523(a)(2)(A) is Not a Basis for*
*GulfSouth's Nondischargeability Claim*

GulfSouth alleges that the debtor's actions render her debt to GulfSouth nondischargeable under 11 U.S.C. §523(a)(2)(A), which excepts from discharge debts:

"for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's … financial condition … ."

Because the debtor allegedly made false representations in a written loan application and related documents, 11 U.S.C. §523(a)(2)(B), not section 523(a)(2)(A), governs the dischargeability of her debt to GulfSouth. Section 523(a)(2)(B) applies to false *written* statements concerning a debtor's financial condition. 4 COLLIER ON BANKRUPTCY ¶523.08, pp. 523-43 (16th ed. 2015) ("False financial statements are dealt with separately in section 523(a)(2)(B) and the exclusion from paragraph (A) makes clear that the false financial statement exception falls within a category separate from the false representation or actual fraud exception and is subject to special conditions to be met before the exception becomes effective. Paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive").

Accordingly, only Bankruptcy Code section 523(a)(2)(B) is applicable to this dispute.[15]

*GulfSouth Proved that the Debt is Nondischargeable*
*Under 11 U.S.C. §523(a)(2)(B)*

Bankruptcy Code section 523(a)(2)(B) makes nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by —

---

[15] Bankruptcy Code section 523(a)(2)(A) is not a basis for excepting from discharge debts arising out of a debtor's use of a false written statement regarding his financial condition. *See In re Lathers*, 540 B.R. 222 (Bankr. M.D. La. 2015), *In re Touchet*, 394 B.R. 418 (Bankr. M.D. La. 2008); *In re Brooks*, 392 B.R. 642 (Bankr. M.D. La. 2008).

  (B) use of a statement in writing —

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such…credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive."

A written statement is materially false for purposes of section 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by *misrepresenting information of the type which would normally affect the decision to grant credit.*'" *Matter of Norris*, 70 F.3d 27, 30 (5th Cir. 1995), quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991) (emphasis added).

GulfSouth proved that the debtor's loan application contained materially false statements about her financial condition. Patrice Perry failed to list on May 7, 2014 loan documents her payday loans from Bottom Dollar, Cash Tyme, Cash Net or Check Lenders, all debts listed on the schedule F she filed in her joint case with former husband Kenneth Garrison. She also admitted under oath both at the July 2014 creditor meeting and at trial that she owed no fewer than three of these payday loans when she signed and verified the application for the May 2014 GulfSouth loan. These misrepresentations gave GulfSouth an untruthful picture of the debtor's financial situation when she applied for the loan.

The evidence also supports the inference that Ms. Perry intended to deceive GulfSouth through the written information she gave to obtain the May 2014 loan. "Intent to deceive may be inferred from the totality of the circumstances." *Byrd v. Bank of Mississippi*, 207 B.R. 131, 138 (S.D. Miss. 1997), citing *In re Jordan*, 927 F.2d 221, 226 (5th Cir. 1991) (overruled on other grounds, *In re Coston*, 991 F.2d 257, 260 (5th Cir. 1993)). "[A] creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the

6

information in the financial statement of the debtor when the totality of the circumstances supports such an inference." *In re Cohn,* 54 F.3d 1108, 1119 (3d Cir.1995). A borrower's lack of care when signing loan documents evidences a reckless disregard for the correctness of the information in the application and thus establishes intent to deceive for purposes of applying section 523(a)(2). *In re Williams*, 431 B.R. 150, 155 (Bankr. M.D. La. 2010); *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Coughlin*, 27 B.R. 632, 636 (1st Cir. B.A.P. 1983).

Ms. Perry admitted signing loan documents that included unambiguous and unqualified statements that her application package was accurate and complete and listed all her debts including payday loans. She specifically wrote on the Statement of Borrowers Financial Condition that the couple owed "no payday loans." Consequently, Perry adopted the false information and in so doing misrepresented her finances. "'When it is not disputed that a loan application was signed by the [d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect.'" *In re Williams*, 431 B.R. 150, 155 (Bankr. M.D. La. 2010), *quoting In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992).

The defendant's confusing explanations of the false statements are not credible. She admitted that two of the unpaid loans were "in collections," as if somehow that relieved her of the duty to disclose and describe them to GulfSouth. Moreover, Perry's failure to recall that she'd previously disclosed the Check Lenders debt to GulfSouth in connection with an earlier Gulf South loan does not excuse her lack of care in omitting the Check Lenders debt when she signed loan documents in May 2014.

7

Finally, GulfSouth proved that it reasonably relied on the debtor's misrepresentations. A declaration of nondischargeability under section 523(a)(2)(B) requires proof that the creditor *reasonably* relied on the debtor's false statements:

> The reasonableness of a creditor's reliance…should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

Williams testified that GulfSouth relied on the debtor's representations about her finances in the loan application documents and that GulfSouth would not have made the loan had it known of Ms. Perry's outstanding payday loans. Thus, GulfSouth would not have made the loan in May 2014 had Ms. Perry been truthful.

Finally, no evidence suggested that a "red flag" warranted GulfSouth's further investigation of information on the debtor's 2014 credit application. GulfSouth previously had loaned money to Perry and no evidence suggested that it had a reason for distrusting the statements on her application.

Accordingly, GulfSouth reasonably relied on information the defendant gave it in May 2014.

### Conclusion

Plaintiff GulfSouth Credit, Inc. proved that Patrice M. Perry's debt to it is nondischargeable under 11 U.S.C. §523(a)(2)(B).

Baton Rouge, Louisiana, March 30, 2016.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE